JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____________________________________x 16 CV 1263

LAWRENCE E. TOMSCHA, ______Civ.________ ( )

Plaintiff, Jury Trial Demanded

-against- **COMPLAINT**

KAREN E. POOLE,

Defendant.

_____________________________________X

**PARTIES**

1. The above Plaintiff, Lawrence E. Tomscha at all times has domicile at 280 Ninth Avenue, Apartment 7H, New York, New York, 10001. The Plaintiff is President of AFGE Local 2431 with Office located at 26 Federal Plaza, Room 19-130B, New York, NY 10278.

2. By information and belief the Defendant has for several years worked at the General Services Administration or GSA and the Defendant is Karen E. Poole, Supervisory Policy & Program Advisor, GS-15 Office of Small Business Utilization (OSBU) U.S. General Services Administration, 2300 Main Street, Room: 2NE, Kansas City, MO 64108-2416. Telephone number 202-694-2989 and e-mail karen.poole@gsa.gov

**VENUE and JURISDICTION**

3. 28 U.S.C. § 1332(a) the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States . . . ."

4. This Court has supplemental jurisdiction on the claim for relief that arises under New York statutory and common law pursuant to 28 U.S.C. 1367 (a) because it forms a part of the same controversy and derives from the same set of facts.

5. The venue is proper as the slanderous event occurred totally in New York County within the purview of the Southern District of New York at 26 Federal Plaza, Room 19-130B, New York, NY 10278. The harm and continuing harm resides at all times is Manhattan County.

**NATURE OF ACTION**

6. On May 6, 2015 Defendant requested to enter the Union Office Room 19-130B, 26 Federal Plaza, New York, NY 10278 with her subordinate manager Janice Bracey determined on locating an employee, Peter Davis, who previously submitted a sick leave request because he felt dizzy, he gave advanced notice to his supervisor he would be back in about 1 hour. Initially the Plaintiff did not realize Mr. Davis was in the office; but looked and confirmed the Defendant's assertion he was there. The Defendant requested and entered the room and spoke in a low voice with Mr. Davis. The Defendant directly thereafter left the Office. The entire visit summed to 5-7 minutes. In a muffled voice directed to the floor the Defendant called the Plaintiff an Asshole before leaving the Union Office. Mr. Davis confirms the Defendant called the Plaintiff an Asshole. The Plaintiff recorded the remark Asshole on an e-mail and sent the e-mail to Defendant. The Defendant responded with a lie or stating error "careless" not "asshole."

7. On information and belief on or about May 8, 2015 Defendant and gave an oral statement to Peter Feffer, GSA's Human Resources Officer, Region 2 that the

Plaintiff, 1) "The Complainant started making a bowing motion and when he came up from the bow, he had both middle fingers in the air. As I was walking out the room where Peter was to leave, the Complainant kept bowing and extending his middle finger toward me." 2) "You know what women are good for. He gesticulated a male masturbating." 3) "The Complainant then mumbled I should take a candy bar, too, and stick it somewhere to give myself pleasure." One through three are sworn statements by the Defendant. The Defendant gave a written statement and was told by GSA Chief Counsel, Carol Latterman, to re-write the statement. At least two different statements were given by Defendant at minimum.

8. On information and belief Mr. Feffer and Ms. Latterman and their staff spread and circulated the defamation and slander per se, totally fictitious to Ms. Scheider, Ms. Stevens, Mr. Smith, Mr. Fletcher, Ms. Louis, Ms. Olson, Mr. Costa and numerous other employees of the General Services Administration. The defamation and per se slander has caused extreme pain and suffering for the Plaintiff who has frequent professional contact with the foregoing individuals.

9. To invalidate the false allegations the Plaintiff resorted to employees who have known him for years to attest to his unblemished character. This disclosure to friends gave rise to further pain and suffering for the Plaintiff; the disclosure totally was caused by the Defendant.

10. Further pain and suffering occurred as the Plaintiff's only available recourse in such a situation, i.e., a Defendant with her subordinate supervisor making fictitious statements is by obtaining a polygraph attesting to validate innocence.

11. The defamation is demonstrably and objectively false, made with malice and the false statements circulated to third parties; many of the parties are unknown and is quantifiably injurious and unprivileged by law. The defamation violates the rights of the Plaintiff under New York State defamation law: the elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third-party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Dillon v. City of New York,* 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dept.1999); *accord Salvatore v. Kumar,* 45 A.D.3d 560, 563, 845 N.Y.S.2d 384 (2nd Dept.2007), *lv. app. den.* 10 N.Y.3d 703, 854 N.Y.S.2d 104, 883 N.E.2d 1011 (2008).

12. The requirement of showing special damages does not apply, however, to a statement that is libelous "per se" – that is, a statement that is defamatory "on its face." Rosenberg, 453 F.3d at 123 n.1; accord Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001); Pappas v. Passias, 271 A.D.2d 420, 421 (2d Dep't 2000). Statements that are libelous per se are those that "tend[] to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 379 (1977)

13. This cause of action is a public necessity and requires Jury scrutiny. The United States Government must maintain daily ethical operations and for a high ranking female ( GS-15) to circulate patently false statements of a sexual nature, and receive the support of Human Resources and the support of management; puts at risk all male employees of the government, employees who do not have that support, i.e.,

lawyers, Human Resource Specialists, Supervisory support. The foregoing disregarded evidence showing the defamation was false increasing the emotional distress of the Plaintiff.

14. The Plaintiff petitioned the GSA Investigator General and the Federal Police, Officer Pappas for a professional investigation with, sworn statements from the Defendant and both declined to conduct such investigation, causing the Plaintiff unnecessary difficulty as to the actual slanderous statements made by the Defendant.

**FACTS**

15. The Plaintiff is a resident of Manhattan.

16. The Defendant resides in a state other than New York and upon information and belief has a domicile in Kansas City, Missouri.

Exhibit 1: Provides proof of many Government employees attesting to the character of Plaintiff. Asking for the attestations was suffering and unnecessary exposure of the slander per se caused upon the Plaintiff.

Exhibit 2: Provides a statement from the Defendant whereas she alleges she said "careless" rather than "asshole."

Exhibit 3: A request from Mr. Feffer and Ms. Stevens, Human Resource Specialists for verification of an unblemished employment record which was not answered.

Exhibit 4: Mr. Davis verified that Ms. Poole called the Plaintiff an "asshole."

Exhibit 5. Letter of Counsel shows disingenuous concern for Mr. Davis impeaching the Defendant's statement for their purpose for the visit to the Union office.

Exhibit 6. Letter to the GSA IG requesting professional investigation with sworn

statements.

Exhibit 7. Polygraph Test demonstrating truthfulness of Plaintiff regarding sexual accusations.

17. Defendant misused her authority as a government GS-15 official to make demands on Peter Feffer, Human Resource Specialist and management to assist her in fabricating the defamation and slanderous per se of the statements in circulation.

18. The Defendant waited at least an entire day or a greater number of days to report the defamation.

19. The Plaintiff's only life-long contact with the Defendant was for a six to seven minute period.

20. The Defendant and Ms. Bracey affirm they came to the office from concern for Mr. Davis. Mr. Davis advised that he would return in 1 hour.

21. The Defendant and Ms. Bracey have made several disparaging remarks about Mr. Davis's over a period of time and have given him a letter of Counsel.

22. The main office room is approximately twelve feet square and any loud voices, actions, or gestures are noticed.

23. Four employees were in the office ( 12 sq. ft. x 12 sq. ft. ) and only the Defendant makes the allegations of defamation or slander per se.

24. The Plaintiff has 31 years of employment with the General Services Administration without any type of misconduct, censure or complaint or making a false statement.

**CLAIM FOR DECLATORY RELIEF AND CAUSE OF ACTION**

Throughout the remainder of employment the Plaintiff must endure the humiliation of the defamation and false sexual allegations, with the employees with which Defendant must work and daily associate.

AND by reason of the forgoing Defendant, Karen E. Poole's malicious and willful defamatory statements are actionable for damages under the law of the State of New York.

WHEREFORE, The Plaintiff respectfully demands the court enter judgment in favor and against the Defendant as follows.

Awarding sum of 400,000 dollars as compensatory damages for the intentional malicious and false nature of the defamation.

The punitive sum of 100,000 dollars for compensatory damages or a larger sum as the jury may award,

Grant other and further relief as the court sees just and proper including the cost of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this day of 18 Month 2 2016

Lawrence E. Tomscha

Lawrence E. Tomscha

Self Represented

280 Ninth Avenue Apt. 7H
New York, NY 10278
Tel. 917-873-9944
e-mail : gsatomscha@gmail.com

## PETITION

I have known Lawrence Tomscha for many years, he always acts in a responsible way regarding speech and gesture. I understand an employee, GS-15, from another Region alleged to Peter Feffer that he made a sexual gesture and made a sexual remark in her presence.

Based on my knowledge of his character and speech over the years I attest the allegations are patently false.

| | YEARS KNOWN |
|---|---|
| [illegible] | 20 |
| [illegible] | 26 |
| [illegible] | 26 |
| [illegible] | 20 |
| [illegible] | 10 |
| [illegible] | 23 |
| Priscilla Rosario | 28 |
| [illegible] | 28 |
| [illegible] | 13 |
| Steven Bradley | 30 |
| Jonathan Phillips | 30 |
| [illegible] | 30 |
| [illegible] | 31 |
| [illegible] | 12 |

Blumberg No. 5113
PLAINTIFF'S EXHIBIT
1

GSA

**Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>**

---

# Re: GSA Record of Contact

1 message

---

**Karen Poole - E** <karen.poole@gsa.gov> Fri, May 8, 2015 at 3:11 PM
To: Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>
Cc: "Janice Bracey (2Q)" <janice.bracey@gsa.gov>, Peter Davis - E <pete.davis@gsa.gov>

Correction to the record is absolutely required. I called you "classless."

On May 8, 2015 2:09 PM, "Lawrence Tomscha - 2PQB" <larry.tomscha@gsa.gov> wrote:

Ms. Poole,

Supervisory Policy Program Advisor
Office of Small Business Utilization
2300 MAIN ST Room: 2NE
KANSAS CITY MO 64108-2416

You visited the Union Office on Wednesday morning May 6, 2015 and of note on leaving you muttered I was an asshole.

I you care to amend this record do so by e-mailing your amendment of contact and I will attached to this recorded moment.

Sincerely,

Lawrence Tomscha
GSA's AFGE Office
26 Federal Plaza Rm. 19-130B
NY NY 10278
Fax 212-264-5986 Phone 212-264-4049
Cell 917-873-9944

GSA LOG-ON REMINDER... NO EXPECTATION OF PRIVACY ON THE GSA SYSTEM TO INCLUDE E-MAIL

PLAINTIFF'S EXHIBIT 2

GSA

Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>

# To Determine Truthful Behavior Question Those Who Are Most Familiar

1 message

**Lawrence Tomscha - 2PQB** <larry.tomscha@gsa.gov> Wed, Jan 13, 2016 at 7:22 PM
To: Shana Stevens - CSSAB <shana.stevens@gsa.gov>, Peter Feffer - CSSAB <peter.feffer@gsa.gov>
Cc: "Sorokoff, Gail" <GSorok@flra.gov>, Thomas Sharpe - Q <tom.sharpe@gsa.gov>, Tony Costa - AG <tony.costa@gsa.gov>

Peter and Shana,

Federal Rules of Evidence Rule 405 " Method of Proving character " ( a ) Reputation or Opinion.

You have known me for years, we have had difficult discussions, you have observed my demeanor, gestures, and verbal assertions.

Attached is a request for the truthful written response regarding Your Personal Knowledge of my Character.

Please attend to the petition, and return.

personal compter, person internet access,personal time.

Lawrence Tomscha
GSA's AFGE Office
26 Federal Plaza Rm. 19-130B
NY NY 10278
Fax 212-264-5986 Phone 212-264-4049
Cell 917-873-9944

GSA LOG-ON REMINDER... NO EXPECTATION OF PRIVACY ON THE GSA SYSTEM TO INCLUDE E-MAIL

**Petition Tomscha 2.docx**
13K



PLAINTIFF'S EXHIBIT 3

## PETITION

I have known Lawrence Tomscha for many years, he always acts in a responsible way regarding speech and gesture. I understand an employee, GS-15, from another Region alleged to Peter Feffer that he made a sexual gesture and made a sexual remark in her presence.

Based on my knowledge of his character and speech over the years I attest the allegations are patently false.

YEARS

________________________________ ______

GSA

Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>

# Dizzy spell on May 6, 2015

1 message

**Peter Davis - E** <pete.davis@gsa.gov> Wed, Jun 10, 2015 at 1:34 PM
To: Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>

On Wednesday, May 6, 2015, I informed my team leader, Janice Bracey, and my supervisor, Mildred Quinley, in a email that I was dizzy and was signing out so that I could go lie down in the union office. I also stated that I would submit a sick leave form when I returned.

I went down to the union office on the 19th floor of 26 Federal Plaza, went into the unoccupied office of Jonathan Phillips, and lay down. Although I copied Lawrence Tomscha on this email, I doubt that he had taken the time to read it or knew that I was in the union office suite. Mr Phillips' office is on the opposite side of the union office suite from Mr. Tomscha's office, and Mr. Tomscha may not have even been in his office when I entered the suite. Sometime later, perhaps an hour or so, Lawrence Tomscha came in and told me that Karen Poole and Janice Bracey were at the door. I was not feeling well and did not really want to speak to anyone at that moment, but I suggested he let them in. I got up, and walked into the central section of the suite and sat down. Karen Poole and Janice Bracey walked in. Karen Poole sat down next to me, placed her hand on my left arm, and told me that they had just come up to see if I was okay. She told me that she liked me but that "this guy is an asshole." She was clearly referring to Lawrence Tomscha, who was several feet away and clearly within hearing range.

I do not know what may have transpired between Karen Poole and Lawrence Tomscha for her to say this. Mr. Tomscha later told me that he offered Janice Bracey a piece of candy, which he said she accepted.

Ms. Poole's words did not strike me as being in keeping with her character or general disposition. I consider her a personal friend, as I do Mr. Tomscha.

Peter D. Davis
Regional Office of Small Business Utilization
United States General Services Administration
(212) 264-4781

PLAINTIFF'S EXHIBIT 4

Blumberg No. 5113

GSA

Date: September 29, 2014

Memorandum to: Peter D. Davis
Small Business Specialist
Regional Office o_swa1 \ses U ation

From: Mildred E. Quinley-V
Supervisory Small Business Specialist
Office of Small Business Utilization

Subject: Letter of Counseling

The purpose of this memorandum is to document my concerns and caution you regarding your behavior. On Tuesday, August 12, 2014, during the 9:30 a.m. weekly OSBU team meeting, your team leader, Ms. Janice Bracey, inquired about the status of the CON 100 contracting course that you were presently taking. You informed her that you would have to drop the course because you have not had the time to work on it. You also mentioned that you were still in the first of three sessions of this course with nine calendar days left to complete. When asked why, you stated that you were busy doing other things. When Ms. Bracey asked about the other things you were working on, you did not answer. Ms. Bracey informed me that at the beginning of this conversation, your behavior immediately changed and you began to raise your voice. Your body language also changed, with your face turning extremely red, your eyes bulging, conveying your anger. You also began to stiffen up in your chair, bumping the table with your chair, and banging your finger on the table while shouting at her. Ms. Bracey ended the meeting after stating, "do you have anything else to say Peter, if not, I am ending this meeting now". At approximately 11:30 a.m., one and one half hours after the team meeting ended, you were observed by Ms. Bracey and other team members, pacing back and forth the inside corridor at least three times; your face was very red, with an angry, distorted facial expression, and your fists balled up, still visibly upset.

Ms. Bracey also informed me that this was not the first incident; she noted several past incidences in which she inquired about work tasks and you reacted with the same, and/or worse behavior.

Please note that this is your second attempt at taking this particular DAU course this fiscal year. Your first attempt at taking this course was not completed and resulted with you having to drop the course.

During your Mid-Year Review discussion, you shared with me that you were falling behind in this course, and asked to drop it. I asked for a reason and you shared with me that you believed taking a two week vacation earlier in the month, had put you behind schedule and this was a pass/fail course and you did not want to fail it. I explained this course was a required training and was included in your Individual Development Plan (IDP). After further discussion, I agreed to allow you to drop the course under the condition you would immediately re-register and complete it by the end of this current fiscal year.

PLAINTIFF'S EXHIBIT 5

On Tuesday, August 12, 2014, at 11:16 am, same day, as the above stated incident, you emailed Rhonda Abbate, OSBU Travel System "Super User" and Dan Tangherlini, GSA Administrator, regarding instructions about making travel arrangements to the OSBU "All Hands" meeting in Washington D.C. When your team leader inquired about this, you stated that the email to Mr. Tangherlini was inadvertently sent and that you intended to email Taiesha Murphy. Google Mail automatically populates the name of the employee after putting in the three letters of the first or last name, which allows you to select the correct person. You need to be mindful of sending emails to incorrect recipients. Furthermore, on the previous Friday, August 8, 2014, Ms. Bracey had already verbally given you instructions to start your travel authorization.

On Thursday, August 14, 2014, you contacted Mr. Cy Greenidge, Program Analyst, GSA Travel Policy and Mr. Tom Mueller, Financial Management Analyst, GSA Travel Policy regarding travel to OSBU "All Hands" Meeting in Washington, DC. You were already given instructions to start your travel authorization, and you were receiving assistance from our Super User.

On Friday, August 29, 2014, you applied for a GSA Project Network assignment for the development of a marketing plan in Region 4, without first discussing your availability for this project with your Team Leader, Janice Bracey.

On September 10, 2014, Ms. Bracey received an email from an employee from FAS, R2, asking for her approval for you to attend a FERS Retirement Class. You signed up for a FERS Retirement Class without first checking with your team leader about being allowed to attend this training. Ms. Bracey then had a discussion with you, stating that you could attend. She further stated in the future you need to seek permission in advance to attend from her as your team lead or me as your direct supervisor. Ms. Bracey later approached you regarding payment for the retirement class, and explained that FAS should not pay for the class, since we are not FAS employees. You began to display frustration at what was being stated and your tone of voice elevated. Ms. Bracey stated that you needed to try to get into the habit of asking permission before registering for any classes, etc. You stated, in an angry voice, "point well taken", and you proceeded to storm out of the office with your fists balled up.

Other team members, who have witnessed your pattern of behavior, such as speaking in a loud and harsh tone and making gestures or expressions that communicate indirect physical harm, have expressed concern. Because your behavior has been construed as threatening, your team members feel uncomfortable being in your presence when you exhibit angry behavior. GSA's policy is to promote a safe environment for all employees. The expectation is that each employee will treat all other employees, as well as customers, with dignity and respect. As such, violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated. GSA is committed to working with its employees to maintain a work environment free from such incidents.

In summary, this letter informs you that you must first discuss all work related requests with Ms. Bracey; as your Team Leader, she is responsible for giving you daily work directions, determining your progress and reviewing the quality of your work product and ensuring that your work assignments are completed in a timely manner. Therefore, you are to cease and desist what appears to be your acting in a hostile and threatening manner whenever being approached by her about your work assignments. Also, this instruction requires you to follow established OSBU procedures for requesting training (cost or no cost). This also includes any requests for volunteering for projects, within OSBU or in another Service, etc.; all requests must be approved

in advance by your team leader and your supervisor before registering or committing yourself to participate. This approval process is essential, as your daily work assignments, which include on-the-job training development and other training, have to be taken into consideration prior to taking on additional work, such as volunteering for out of office projects. Such tasks require time away from your current work assignments or further completion of your DAU course. You are to re-register for CON 100 "Shaping Smart Business Solutions" by no later than **September, 30, 2014,** and complete this course assignment, within the DAU allotted time frame, as you cannot move forward with the remaining five (5) OSBU mandated courses without the completion of this course.

Please be advised that GSA provides employees with an Employee Assistance Program (EAP) to assist you if you are having personal problems that are affecting your conduct on the job. If you believe that EAP could be of assistance, you are urged to contact their representative on 1-800-222-0364. Your participation in the program is strictly voluntary and confidential.

In closing, any questions, issues and/or concerns about your work tasks or questions about the Regional Office of Small Business Utilization, should be addressed to your team leader, Janice Bracey. If she's not available, then you are to contact me.

GSA

**Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>**

# Re: Abuse of Authority

1 message

**Thomas Sharpe - Q** <tom.sharpe@gsa.gov> Tue, Dec 29, 2015 at 11:22 AM
To: Ibrahim Arce <ibrahim.arce@gsaig.gov>, Antonia Harris - C <antonia.harris@gsa.gov>, Tony Costa - AG <tony.costa@gsa.gov>
Cc: Denise Roth - A <denise.roth@gsa.gov>, Jonathan Phillips - 2PQBC <jonathan.phillips@gsa.gov>, Jesse Rose <jRose@theroselawgroup.com>, Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>, "robert.erickson@gsaig.gov" <robert.erickson@gsaig.gov>, Joseph.Dattoria@gsaig.gov

Thank you Ibrahim. I am informed by Toni that this issue will be reviewed by Tony Costa on behalf of GSA management and that action is required of me at this point. I note that Karen Poole does not report within FAS.
Tom

Thomas A. Sharpe, Jr.
Commissioner, Federal Acquisition Service
U.S. General Services Administration
1800 F Street, NW #6460M
Washington, DC 20405
Office: 703.605.5400
Mobile: 571.305.0448
tom.sharpe@gsa.gov

On Wed, Dec 16, 2015 at 9:01 AM, <ibrahim.arce@gsaig.gov> wrote:

Good morning Lawrence,

After reviewing the allegation contained in this email this is an administrative matter that falls under GSA management purview. Therefore, my office will not conduct an investigation into such.

In addition, this incident is currently being investigated by the GSA Employee Labor Relations office.

Thanks,

**Ibrahim Arce**
**Special Agent in Charge**
**U.S. General Services Administration**
**Office of Inspector General**
**Northeast Regional Investigations Office (JI-2)**
**26 Federal Plaza, Suite #1751**
**New York, NY 10278**
**Desk: 212-264-7369**
**Fax: 212-264-7154**

WARNING: This email and any attachments may contain legally privileged or sensitive information. The information is intended solely for the use of the individual or entity to whom it is addressed. If you are not the



PLAINTIFF'S EXHIBIT 6

intended recipient, you are hereby notified that any unauthorized use, dissemination, distribution, or reproduction, or taking any action in reliance on the contents of this transmission, is strictly prohibited. If you received this transmission in error, please notify the sender and delete the message and any attachments.

From: Thomas Sharpe - Q <tom.sharpe@gsa.gov>
To: Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov>, "robert.erickson@gsaig.gov" <robert.erickson@gsaig.gov>,
Cc: Denise Roth - A <denise.roth@gsa.gov>, Jonathan Phillips - 2PQBC <jonathan.phillips@gsa.gov>, Jesse Rose <jRose@therosélawgroup.com>, Ibrahim Arce <ibrahim.arce@gsaig.gov>
Date: 12/15/2015 04:03 PM
Subject: Re: Abuse of Authority

---

Lawrence, I do not recall your direct ask of me for an investigation, but by copy here I am alerting the IG to your request, which I support. Thanks for bringing these matters to my attention. Tom

Thomas A. Sharpe, Jr.
Commissioner, Federal Acquisition Service
U.S. General Services Administration
1800 F Street, NW #6460M
Washington, DC 20405
Office: 703.605.5400
Mobile: 571.305.0448
tom.sharpe@gsa.gov

On Tue, Dec 15, 2015 at 1:35 PM, Lawrence Tomscha - 2PQB <larry.tomscha@gsa.gov> wrote:

Dear Administrator.

This is a second notice that 5 U.S.C. § 2302(c) specifically states that "[t]he head of each agency shall be responsible for the prevention of prohibited personnel practices..."

Notice has been provided that Ms. Poole has seriously libeled my reputation, I have never lied in a government document no have I had any allegation made against me regarding making sexual gestures. 31 years.

Ms. Poole made false accusations, which Ms. Scheider agreed to investigate. Ms. Scheider created her fact-finding, Q and A, and is abusing her authority by using her employees to engineer answers to integrate with Ms. Poole's slanderous accusations and make them more believable.

I have asked Mr. Sharpe several times to call upon professional investigators such as the

IG or FPO to conduct the investigation.

Creating a Human Resources Opinion Report by Ms. Scheider from her " fact finding " and declining to use professional investigators is evidence beyond a preponderance of evidence the fact-finding is to obfuscate the truth and support slanderous accusations regarding a Supervisory GS-15.

A refusal to respond to my second communication is a presumption of abdication of statutory assigned responsibility.

Sincerely,

Lawrence Tomscha
GSA's AFGE Office
26 Federal Plaza Rm. 19-130B
NY NY 10278
Fax 212-264-5986 Phone 212-264-4049
Cell 917-873-9944

attachment below
GSA LOG-ON REMINDER... NO EXPECTATION OF PRIVACY ON THE GSA SYSTEM TO INCLUDE E-MAIL

12/15/2015

Ibrahim Arce In Charge Office Of Inspector General
Office of Investigations
U.S. General Services Administration
26 Federal Plaza Room 1751
New York, NY 10278

Re: Slanderous And Libelous Statements

Karen E Poole, Supervisory Policy Program, Karen.poole@gsa.gov Office of Small Business Utilization 2300 Main Street Room 2NE Kansas City, MO 64108 telephone 202-694-2989 Cell phone 816-806-6811 fabricated false and libelous statements to Peter Feffer of Human Resources against Lawrence Tomscha, Union President .

Ms. Poole came to the Union office on May 6, 2015 looking for Mr. Peter Davis. Mr. Tomscha allowed her entry. She spoke softly with Mr. Davis for about 2 minutes and on exiting called Mr. Tomscha an Asshole. Total time of event 6-7 minutes.

Mr. Tomscha sent Ms. Poole an e-mail documenting the remark a day later and in anger and retaliation Ms. Poole fabricated that Mr. Tomscha made sexual gestures and statements in her presence.

Ms. Scheider, National Director of Human Resources , has written two e-mails stating she was intent on disciplining Mr. Tomscha for representational activity. Mr. Tomscha filed an EEOC complainant against Ms. Scheider for creating a hostile work environment while engaged in protected EEOC activity. The complaint is under investigation and Ms. Poole is delaying completion of her affidavit as well as Ms. Scheider.

The truth has the same story when repeated, liars must constantly change the same story to fit new questions about the story. I asked Mr. Sharpe to summon the IG and their professional team who more often than not can catch liars. Lying to a federal investigator has serious consequences. I asked him to use this resource to determine an opinion of the true and unchanging story or events. Instead of using professionals trained to catch liars, Ms. Scheider is " fact-finding" ( Q and A) and assigned her employees to obtain more information so she can advise Ms. Poole and Ms. Poole can change her story or narrative to make it more believable. Ms. Scheider has prohibited a transcript or recording of the Q and A session and is going to create a Human Resources Written Opinion for Ms. Poole's benefit.

I spoke with John Ulianko, Director of the Tri-State Area for Homeland Security, he was shocked when he was told and advised me to inform the IG of this event. He confirmed to me that his relationship with me throughout the years on grievances and discussions that such allegations were false. He stated that I knew the rules of behavior.

A GS-15 woman who fabricates sexual accusations is a danger to all employees, and a professional investigation is warranted in this matter. The cover-up " fact finding " by Ms. Scheider can be viewed worse than the accusation. I may be required by GSA to petition the Federal Protection Service for assignment of a professional investigator.

Sincerely,

Lawrence Tomscha

Lawrence Tomscha
GSA 26 Federal Plaza Room 19-130B
New York, NY 10278

CENTER FOR INVESTIGATION & FORENSIC POLYGRAPH, LLC ™
140 BROADWAY, 46TH FLOOR, NEW YORK, N.Y. 10005
TEL: (212) 987-0808; FAX: (212) 500-0018

Member of the AmLawrencean Polygraph Association
Member of the AmLawrencean College of Forensic Examiners
Member of the Association for Treatment of Sexual Abusers
Member of the AmLawrencean Association of Police Polygraphists

October 2nd, 2015

Lawrence Tomscha
280 9th Avenue, Apt # 7H
New York, NY 10001

**Subject:** **Tomscha, Lawrence**
**Date of Birth:** **August 25th, 1948**
**Type & File #:** **IO—05-15-1006 LT**
**Date of Examination:** **October 2nd, 2015**

Dear Mr. Tomscha:

As per your request, a Forensic Psychophysiological Truth Verification Examination was conducted yourself, **Mr. Lawrence Tomscha**, who was born on **August 25th, 1948** and resides at **280 9th Ave, NYC, NY 10001** and had NYS Drivers License #: **389 237 231** The examination was conducted today to determine Mr. Tomscha's truthfulness with respect to certain accusations that were made against him by Ms. Poole. Mr. Tomscha did not provide permission to release the results of the polygraph to anyone except him.

**Procedure**:
The following forms were reviewed with Mr. Tomscha prior to the examination:
1. Release of Information Form
2. The consent and Limits of Confidentiality Form
3. The Medical Questionnaire Form
4. The Cooperation Agreement Form

Prior to the examination Mr. Tomscha signed a consent form assuring all concerned he was aware of his rights regarding the polygraph, and was taking the examination voluntarily. At the conclusion of the examination he again signed a form assuring all concerned that he was well treated, and remained of his own free will, knowing he could stop the procedure and leave at any time he desired.

The Forensic Psychophysiological Truth Verification examination utilized computerized forensic testing instrumentation (Lafayette System) which recorded psychophysiological responses into a software designed by Lafayette Instrument Co, Lafayette, Indiana. Relative changes in blood pressure, rate and strength of pulse rate, electrodermal activity, and respiratory inhalation/exhalation patterns were utilized to determine the tonic and phasic tracings. Prior to the test being administered, a calibrated verification of sensitivity was accomplished to determine if the subject was a suitable candidate for the forensic procedures as well as determine the anxiety level of the subject.

PLAINTIFF'S EXHIBIT 7

**Intake Profile:** Mr. Tomscha is a 67 year old male whose physical appearance was consistent with his stated age. Mr. Tomscha reports to be single. According to Mr. Tomscha, he is not under the care of a physician. He does not report to be suffering from any illness; however, Mr. Tomscha cannot be so sure since he has not seen a doctor in the past year or two. Mr. Tomscha states that he did not feel any pain or physical discomfort at the time he was interviewed and he reports that his level of nervousness is in the low range (2) on a scale from 1—10. According to Mr. Tomscha he slept approximately 3 hours the previous night and he had a good night rest. He denies the consumption of alcoholic beverages and /or illicit drugs in the last 24 hrs.

**Pre-Test Phase**:
Prior to the examination the Mr. Tomscha was asked a series of questions as to how he would explain this matter and why he was being submitted to the polygraph examination. Mr. Tomscha stated the following:

*"I am taking this exam because Karen Poole made false statements against me, stating I gave her the finger twice, and made a masturbation motion and that she should get a candy bar and stick it someplace.*

*I believe the polygraph will demonstrate I did not do or say the above and her statements are false. I may provide the results to the General Services Administration of the United States."*

*"I swear that this statement is truth."*
*New York City, NY. October 6th, 2015* *Lawrence Tomscha*

Previous to the examination this examiner explained and provided the definitions of sexual gestures, (verbal and non verbal) and the flipping of the middle finger. Also, the examiner asked Mr. Tomscha many questions regarding the matters; however, Mr. Tomscha denied having flipped the middle finger or throwing the middle finger at Ms. Poole. In addition, Mr. Tomscha denies having making any sexual gestures or talking to Ms. Poole in any degrading manner.

Then, this examiner asked Mr. Tomscha if he had any other information which he had withheld regarding the accusations Mr. Poole made against him, and he said, "No."

**In-Test Phase:**
Prior to the administration of the forensic psychophysiological test, an acquaintance test was administered to verify that the subject was a suitable candidate for the polygraph examination. This examination allows the subject to become acquainted with the polygraph procedure before the actual administration of the test with the relevant questions and at the same time, allows the examiner to determine if the subject is suitable for such exam or not.

Mr. Tomscha was found to be a suitable subject to take the polygraph examination. In addition, all the relevant questions were reviewed with Mr. Tomscha and he understood all the questions before the examination took place.

FORENSIC PSYCHOPHYSIOLOGICAL TRUTH VERIFICATION EXAMINATION

The Following Relevant Questions Were Asked on Three Separate Charts of an Integrated Zone Comparison Technique, utilizing a Lafayette LX-4000 Computerized Polygraph System:

| QUESTION FORMULATION | RESPONSE | REACTION |
|---|---|---|
| 1. On May 6th, 2015, did you throw the middle finger at Ms. Poole? | NO | NO SIGNIFICANT REACTION |
| 2. On May 6th, 2015, did you make sexual gestures, like masturbating at Ms. Poole? | NO | NO SIGNIFICANT REACTION |
| 3. On May 6th, 2015, did you suggest to Ms. Poole to take a candy bar and to stick it so she can receive sexual pleasure? | NO | NO SIGNIFICANT REACTION |

**Remarks:**

The charts were analyzed using the "Horizontal Scoring System." This system has been shown to be ninety percent accurate when decisions of Truthfulness are rendered where total scores are + 4.5 or higher, and Deception when – 4.5 or lower. **This examinee's score was + 9.5 to relevant question 1, + 4.5 to relevant question 2 and + 10.5 to relevant question 3, an indication of No Deception.**

**Post-Test Interview:**

The preliminary results of the polygraph examination were shared with Mr. Tomscha although he was told that the graph have to be analyzed and scored for the final results.

**Conclusion:**

It is the professional opinion of this examiner, based on the reactions to the formulated above test questions, can be concluded as **Truthful.**

This examination was conducted by:

Marcella Pérez, M.A.
Forensic Psychophysiologist

*Disclaimer: This report contains confidential information and it is intended to be used for official purposes only when necessary. None of the above parties mentioned or not mentioned are authorized to misused, mishandled, reproduced and/or modify, some/partial or all of the above information without the written consent of all of the parties involved (examinee, the person requesting the exam and the examiner). This report and its information, whether is partial or full, should not be posted or disclosed online or to any other public means by anyone, with or without the intention to hurt the character of any person(s) mentioned. In the case that any mishandling or disclosure of the confidential information should happen, the party whose character is in question, may have the right to take legal action against the person(s) who have mishandled any or all of the above information. This report contains a seal of the company on the signature; which is a proof of its authenticity.*