UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

LAWRENCE E. TOMSCHA,                              :

                         Plaintiff,           :

                                :

                   v.                              :          16 Civ. 1263 (KPF)

KAREN E. POOLE,                                   :

                                :

                     Defendant.    :

------------------------------------------------------X     <u>OPINION AND ORDER</u>

LAWRENCE E. TOMSCHA,                              :

                                :

                         Plaintiff,           :

                                :

                   v.                              :          16 Civ. 1917 (KPF)

                                :

JANICE E. BRACEY,                                 :

                                :

                     Defendant.    :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>December 20, 2016</u>

KATHERINE POLK FAILLA, District Judge:

      On February 18, 2016, Lawrence E. Tomscha, an employee of the

General Services Administration (the "GSA"), filed a *pro se* lawsuit against

Karen E. Poole, a GSA Deputy Associate Administrator in the Office of Small

Business Utilization.  Plaintiff alleged that Defendant Poole made libelous,

slanderous, and defamatory statements about Plaintiff during and after an

interaction between the two that took place on May 6, 2015, in the Union Office

room within the GSA's Office at 26 Federal Plaza in New York, New York.

Plaintiff claimed that Poole's willful and malicious conduct caused him extreme

pain and suffering, for which he was owed compensatory and punitive

damages.

Earlier, on December 29, 2015, Plaintiff had filed a claim in the Civil Court of the City of New York, Small Claims Part 45, No. 3332 SCNY 2015 1, against Janice E. Bracey, a GSA Lead Small Business Specialist.  Plaintiff sought the imposition of a damages award against Defendant Bracey "to recover monies arising out of defamation and lawyers['] fees and polygraph cost"; the Court understands this claim to relate to the same incident involving Defendant Poole.  On March 15, 2016, the United States Attorney's Office for the Southern District of New York, on behalf of Bracey, removed that action to this Court.

On June 24, 2016, Defendants Poole and Bracey each moved this Court for an order (i) substituting the United States as defendant in her respective case and (ii) dismissing her case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' motions to substitute the United States as defendant and dismiss each above-captioned case are granted.

## BACKGROUND[1]

### A.   Factual Background

#### 1.   The Parties' Employment Positions and Responsibilities

Plaintiff has been a GSA employee for 31 years.  (Compl. ¶ 24).  For 25 years, he has also served as President of Local 2431 of the American Federation of Government Employees ("AFGE").  (Pl. Aff. 1).  Plaintiff relates that in his capacity as President, he "represents employees in [United States Merit Systems Protection Board] hearings, [United States Equal Employment Opportunity Commission] hearings, mediations, [Office of Special Counsel] complaints, [and] depositions." (*Id.*).

Defendant Poole has been employed by the GSA Office of Small Business Utilization for 24 years.  (Poole Decl. ¶ 1).  As of May 6, 2015, Poole was that office's Supervisory Policy and Program Advisor.  (*Id.*).[2]  Her duties and responsibilities in this capacity included:

> acting on behalf of the Associate Administrator for Small Business Utilization; coordination of the daily operation of staff activities relating to the Office of Small

---

[1]   For convenience, Defendant Poole's opening brief is referred to as "Poole Br." (Poole Dkt. #18) and her reply brief as "Poole Reply" (Poole Dkt. #27).  The declarations filed by Poole in support of her opening brief are each identified by the identity of the declarant: Poole's declaration is referred to as "Poole Decl." (Poole Dkt. #19), and Jerome Fletcher's declaration as "Fletcher Decl." (Poole Dkt. #20).  Defendant Bracey's opening brief is referred to as "Bracey Br." (Bracey Dkt. #15) and her reply brief as "Bracey Reply" (Bracey Dkt. #23).  The declarations filed by Bracey in support of her opening brief are each identified by the identity of the declarant:  Bracey's declaration is referred to as "Bracey Decl." (Bracey Dkt. #16), and Mildred Quinley's declaration as "Quinley Decl." (Bracey Dkt. #17).  Plaintiff filed a single brief in opposition to the motions filed by Defendants Poole and Bracey.  It is referred to as "Pl. Opp." (Poole Dkt. #26; Bracey Dkt. #21), and the affirmation filed by Plaintiff in support of this brief is referred to as "Pl. Aff." (Poole Dkt. #26; Bracey Dkt. #21).  Plaintiff also provided an email that he received from GSA employee Peter Davis, which is referred to as "Davis Email" (Poole Dkt. #1 Ex. 4).

[2]   Defendant Poole has subsequently been promoted to her current position, Deputy Associate Administrator.  (Poole Decl. ¶ 1).

> Business Utilization and collaborating with other offices within the GSA as necessary; sharing in the responsibility for the personnel management, budget, political, and operational implications of these activities/functions; and providing direct guidance to all staff managing agency activities related to policy, inreach, outreach, budget, and human resource management.

(*Id.* at ¶ 3). More generally, as a supervisor, Poole's "duties and responsibilities affiliated with human resource management are vast and include all aspects [of] managing personnel. A large component of this responsibility is ensuring the wellbeing of ... employees while they are in the workplace." (*Id.* at ¶ 4).

Defendant Bracey has worked for the GSA for 34 years. (Bracey Decl. ¶ 1). She currently serves as a GS-13 Lead Small Business Specialist. (*Id.*). As of May 6, 2015, Bracey's duty station was the GSA Office at 26 Federal Plaza, New York, New York. (*Id.*).[3] As a Lead Small Business Specialist, Bracey is responsible for:

> managing and overseeing the Region 2 Small Business Program; counseling small businesses on [the] GSA's contracting programs; conducting workshops and seminars on how businesses can contract with [the] GSA, monitoring the region's small business program goals; and assigning [and] monitoring tasks and projects that are assigned to [Small Business Utilization team member] Peter Davis.

(*Id.* at ¶ 2; *see also* Quinley Decl. ¶ 4). She also serves as "Team Leader of Peter Davis," and is "responsible for overseeing any personnel matters concerning Mr. Davis, including, but not limited to, his wellbeing in the workplace." (Bracey Decl. ¶ 2; *see also* Quinley Decl. ¶ 4).

---

[3]     Defendant Bracey's current duty station is One World Trade Center, New York, New York. (Bracey Decl. ¶ 1).

As GSA employees, Plaintiff, Defendant Poole, and Defendant Bracey are all bound by the GSA's Policy Statement on Harassment, which requires any employee who believes that he or she has been the victim of sexual or non-sexual harassment or sexual misconduct promptly to report the offending incident to a management official, Human Resources official, or an Equal Employment Opportunity Official. *See* GSA Order ADM 2325.7(d) (superseded and replaced on December 18, 2015, by GSA Order ADM 2325.8, which requires the same) (cited in Poole Br. 3-4 and Bracey Br. 3-4)).[4] They are obligated "to report and stop harassment of any kind in the work environment," including by "assisting others in reporting harassment." (Bracey Decl. ¶ 3). Defendant Poole's responsibility in this regard "is greater than the average employee['s] because [she is] a supervisor." (Poole Decl. ¶ 5).

---

[4]     Sexual harassment is defined in both the prior and present policy statements as:

> [i] [a]ny conduct of a sexual nature, without limitation, through spoken or written communication, gestures or physical contact, sexual advances, requests for sexual favors where acceptance or rejection could affect employment decisions, remarks containing sexual content, or displays of sexually suggestive materials; [ii] [a]ny conduct of a sexual nature that an employee knows or reasonably should know is unwelcome by those to whom it is directed or who witness it; [or] [iii] [a]ny conduct of a sexual nature that is intended, or is reasonably understood as being intended, to threaten, harass, coerce, intimidate, or offend.

GSA Order ADM 2325.8. Sexual misconduct encompasses sexual harassment, "or any conduct of a sexual nature by or between employees that interferes with the performance of their official duties or the official duties of other employees, including conduct that results in or gives the appearance of resulting in favoritism in employment decisions concerning one of the participants." *Id.* Harassment generally "refers to unwelcome verbal or written comment or physical conduct that is so objectively offensive that it alters the terms or conditions of employment or creates a hostile work environment." *Id.*

### 2.    The May 6, 2015 Incident

On May 6, 2015, Plaintiff and Defendants Poole and Bracey were working at the GSA's offices at 26 Federal Plaza.  (*See* Compl. ¶ 6; Poole Decl. ¶ 6; Fletcher Decl. ¶ 8; Bracey Decl. ¶ 4).[5]  Though Poole's normal duty station is in Kansas City, Missouri, she was on that day "providing subcontracting training and ... audit[ing] the contract files of [the] GSA's contracting officers" at the 26 Federal Plaza office.  (Poole Decl. ¶¶ 2, 6).  "As the Lead Small Business Specialist in the region, it was [Bracey's] responsibility to assist ... Poole with any and all matters that she needed during her stay in the region."  (Bracey Decl. ¶ 4; *see also* Quinley Decl. ¶ 7).

At some point during the workday, Defendants Poole and Bracey learned that GSA employee Peter Davis was unwell and resting in the GSA Union Office, which is located within the 26 Federal Plaza office.  (Poole Decl. ¶ 7; Fletcher Decl. ¶ 8; Bracey Decl. ¶ 4).  Poole and Bracey went to that office "to check on Mr. Davis'[s] wellbeing" because Mr. Davis was an employee over whom Defendants had "oversight-supervision."  (Poole Decl. ¶ 7).  Poole as a supervisor was obligated "to check on the wellbeing of [her] employees," particularly where, as here, they were "lying down in GSA office space rather

---

[5]    In their memoranda and declarations, both Defendant Poole and Defendant Bracey indicated that the incident in question took place on May 4, 2015.  (*See* Poole Br. 3-4; Bracey Br. 3-4; Poole Decl. ¶ 6; Bracey Decl. ¶ 4).  Plaintiff takes issue with their use of the May 4, 2015 date, arguing that their use of that date "is material evidence that none of the affiants participated in the drafting of the affirmations and furthermore did not even read their own affirmations."  (Pl. Aff. ¶ 28).  Plaintiff seems to contend that the Court should infer falsity from the misidentification of the date and disregard the submitted sworn declarations.  (*Id.* at ¶¶ 33-34).  This Court declines to so infer without basis; it will accept Plaintiff's contention, which is supported by the evidence in the record, that the incident took place on May 6, 2015, and will forgive Defendants their apparent typographical errors.

than the health center." (Poole Decl. ¶ 7). Bracey likewise felt that, "pursuant to [their] job responsibilities," she and Poole had "an obligation to check on Mr. Davis to see if Mr. Davis was okay." (Bracey Decl. ¶ 5).

Plaintiff initially denied the pair entry to the Union Office. (Compl. ¶ 6; Pl. Aff. ¶ 2). Plaintiff claims that he was unaware that Mr. Davis was in the office, and needed to locate him prior to allowing Defendants to enter. (Compl. ¶ 6; Pl. Aff. ¶ 2).[6] Defendant Poole recalled Plaintiff asking Defendant Bracey whether the two women were there "to hate on" Plaintiff. (Poole Decl. ¶ 8). According to Plaintiff, Defendants Poole and Bracey "declared they were very concerned for employee Davis and Plaintiff responded to both [Defendants] that they hate Mr. Davis and that they were lying about their intent of visiting the [U]nion [O]ffice. Defendant Poole blushed which was noticed by Plaintiff and remarked it was a symptom of lying." (Pl. Aff. ¶ 3).

In any event, sometime after the women explained the reason for their visit, Plaintiff let them into the Union Office. (Compl. ¶ 6; Pl. Aff. 2; Poole Decl. ¶¶ 8, 9). Once Plaintiff let the two women inside, Defendant Poole saw Plaintiff make "a bowing motion to [her] while extending both middle fingers." (Poole Decl. ¶ 9). Plaintiff also offered Poole a candy bar and suggested that she "stick it somewhere to give [herself] pleasure." (*Id.*). As the women left the office, Poole heard Plaintiff "make sexually explicit gestures and remarks at her,

---

[6]     The Court pauses to note the inconsistency between two of Plaintiff's contentions:
        Here, Plaintiff indicates that the GSA Office was large enough that it was possible for
        him to be unaware of Mr. Davis's presence therein. (Compl. ¶ 6; Pl. Aff. ¶ 2).
        Elsewhere, Plaintiff argues that this office was so small that it would have been
        impossible for Defendant Bracey to have been unaware of the substance of the
        conversation between Plaintiff and Defendant Poole. (Pl. Aff. ¶ 25).

including '[y]ou know what women are good for' while moving his hand back and forth to imitate a man masturbating." (Poole Br. 4 (quoting Poole Decl. ¶ 9)). Plaintiff denies these allegations and claims that on Poole's way out of the Union Office or while "looking at employee Davis and [D]efendant Bracey," Poole called Plaintiff an "asshole." (Pl. Aff. ¶ 3; *see also* Compl. ¶ 6). In response, "Plaintiff raised his voice and said '[y]ou called me an [a]sshole' and [D]efendant Poole hung her head." (Pl. Aff. ¶ 3). Mr. Davis states similarly that Poole "told [him] that she liked [Mr. Davis] but that 'this guy is an asshole.'" (Davis Email). He believed "[s]he was clearly referring to [Plaintiff], who was several feet away and clearly within hearing range." (*Id.*). Bracey was not included in the conversation between Poole and Plaintiff. (*See* Bracey Decl. ¶ 5). The encounter lasted five to seven minutes. (Compl. ¶ 6).

### 3. Events Subsequent to the May 6, 2015 Incident

Defendant Poole "was offended by [Plaintiff's] statements and conduct and deemed them completely inappropriate for the federal workplace. In addition, [she] believed that [Plaintiff's] statements and conduct served no purpose other than to intimidate, offend, and harass [her]." (Poole Decl. ¶ 10). Defendant Bracey noted that Poole "was very upset, about what took place and [Plaintiff's] inappropriate behavior." (Bracey Decl. ¶ 6). Believing herself to have been a victim of sexual harassment, Poole asked Bracey for the contact information of a human resources officer. (Poole Decl. ¶ 12; Bracey Decl. ¶ 6). Bracey introduced Poole to Peter Feffer, the Human Resources Officer for Region 2. (Poole Decl. ¶ 12; Bracey Decl. ¶ 6). Bracey knew that Mr. Feffer

was "the person that [she], and the rest of the region, rel[ied] on to report workplace personnel issues including inappropriate conduct in the workplace such as sexual harassment." (Bracey Decl. ¶ 6; *see also id.* at ¶ 7). Bracey believed that "[a]s a Lead Small Business Specialist [she] had an official duty to assist [Defendant] Poole in reporting [her] allegations to the proper person." (Bracey Decl. ¶ 6; *see also* Quinley Decl. ¶¶ 8-9).

On May 8, 2015, Defendant Poole provided Mr. Feffer with an oral and a written statement describing the incident, and subsequently cooperated with the GSA's investigation of it. (Compl. ¶ 7; Poole Decl. ¶ 12; Poole Br. 4). Plaintiff alleges that Poole also gave statements to Carol Latterman, GSA's Chief Counsel, which statements described the circumstances of Poole's meeting with Plaintiff. (Compl. ¶ 7). He further claims that these statements were subsequently spread and circulated to numerous GSA employees with whom Plaintiff "has frequent professional contact." (*Id.* at ¶ 8). Defendant Bracey was not present for the initial conversation between Poole and Mr. Feffer. (Bracey Decl. ¶ 7). Sometime later though, Bracey "participate[d] in an interview and submit[ted] a statement as part of a formal fact finding," as she was required to do by the GSA's policies and her job responsibilities. (*Id.*; *see also* Quinley Decl. ¶¶ 5, 9).

Also on May 8, 2015, Plaintiff emailed Defendant Poole, copying Defendant Bracey and Mr. Davis. (Compl. Ex. 2). In his email, Plaintiff stated, "[y]ou visited the Union Office on Wednesday morning May 6, 2015 and of note on leaving you muttered I was an asshole." (*Id.*). Poole replied one hour later,

writing that a "[c]orrection to the record [was] absolutely required.  I called you 'classless.'"  (*Id.*).  On May 12, 2015, Mr. Feffer emailed Plaintiff, Poole, Bracey, and Mr. Davis to request written statements regarding the events of May 6.  (Pl. Opp. Ex. 4).

On October 2, 2015, Plaintiff voluntarily subjected himself to a Forensic Psychophysiological Truth Verification Examination "to determine [Plaintiff's] truthfulness with respect to certain accusations that were made against him by [Defendant Poole]."  (Compl. Ex. 7, at 1).[7]  When asked whether he had "throw[n] the middle finger at [Defendant] Poole," "made sexual gestures, like masturbating at [Defendant] Poole," or "suggest[ed] to [Defendant] Poole to take a candy bar and to stick it so she can receive sexual pleasure," Plaintiff responded "no" and exhibited "no significant reaction."  (*Id.* at 3).  It was the professional opinion of Forensic Psychophysiologist Marcella Pérez, M.A., "based on the reactions to the formulated above test questions," that Plaintiff was being truthful in his responses.  (*Id.*).

On December 15, 2015, Plaintiff emailed Thomas A. Sharpe, Commissioner of the GSA's Federal Acquisition Service to request that Mr. Sharpe "call upon professional investigators such as the [Inspector General] or FPO to conduct [an] investigation" into Defendant Poole's "false accusations" and libel of Plaintiff.  (Compl. Ex. 6).  Plaintiff indicated that this was at least his second request for such an investigation.  (*Id.*).  Later that day, Mr. Sharpe

---

[7]     This examination was not part of any GSA investigation, but was undertaken by Plaintiff "on his own volition."  (Pl. Aff. ¶ 31).

responded.  (*Id.*).  He wrote that he did "not recall [Plaintiff's] direct ask of [him]
for an investigation," but that he would "alert[] the IG to [Plaintiff's] request."
(*Id.*).  Plaintiff also wrote to Ibrahim Arce of the GSA's Office of Inspector
General to report that Poole had "fabricated false and libelous statements to
Peter Feffer of Human Resources" about Plaintiff and to request a "professional
investigation" of the matter.  (*Id.*).

On December 16, 2015, Mr. Arce wrote to inform Plaintiff that "the
allegation contained in [his] email [was] an administrative matter that falls
under GSA management purview," and that it was "being investigated by the
GSA Employee Labor Relations office."  (Compl. Ex. 6).  Accordingly, it was not
a matter that Mr. Arce's office would investigate.  (*Id.*).  Mr. Sharpe
subsequently indicated that the issue would be reviewed by Tony Costa on
behalf of GSA management.  (*Id.*).  On May 19, 2016, Peter Feffer emailed
Plaintiff to inform him that "[t]he Agency administrative investigation
concerning the incident on May 6, 2015 concluded in April 2016," and that "no
administrative action [would] be taken against [Plaintiff] as a result thereof."
(Pl. Opp. Ex. 3).

Prior to the conclusion of the investigation, on February 27, 2016,
Plaintiff submitted a Freedom of Information Act ("FOIA") request, number
GSA-2016-000476[,] seeking "[a]ll emails from Karen E. Poole, Peter Feffer,
Janice Bracey, [and] Susan Schneider from May 6, 2015 to May 31, 2015[,]
[a]nd all statements from Karen Poole and Janice Bracey regarding an alleged
incident on May 6, 2015."  (Pl. Opp. Ex. 5 (internal quotation mark omitted)

(quoting Plaintiff's FOIA request)).  The FOIA Office wrote to Plaintiff on

March 9, 2016, to advise him that the statutory charge for his search would be

$1,524.00.  (*Id.*).  Plaintiff later alleged the GSA "created [this] grossly inflated

fee sheet of over 1500 dollars" in order "to protect a perjurer."  (Pl. Aff. ¶ 30).

## B.     Procedural Background

As noted above, on June 24, 2016, Defendants Poole and Bracey each

moved this Court for an order substituting the United States as defendant and

dismissing their case pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure.  (Poole Dkt. #17-18; Bracey Dkt. #14-15).  Plaintiff filed his

opposition on July 25, 2016.  (Poole Dkt. #26; Bracey Dkt. #22).  On August 8,

2016, each Defendant filed her reply.  (Poole Dkt. #27; Bracey Dkt. #23).

Defendants additionally wrote on August 24, 2016, to provide the Court with

declarations that they had signed by hand to replace the electronically signed

declarations with which Plaintiff took issue in his opposition to Defendants'

motions.  (Bracey Dkt. #24; *see also* Pl. Opp. 2; Pl. Aff. ¶ 8).

## DISCUSSION

## A.     The Court Will Substitute the United States as a Defendant

### 1.     Applicable Law

"The basic rule of federal sovereign immunity is that the United States

cannot be sued at all without the consent of Congress."  *Block* v. *North Dakota*,

461 U.S. 273, 287 (1983); *accord United States* v. *Mitchell*, 463 U.S. 206, 212

(1983).  Thus, the United States "is immune from suit save as it consents to be

sued, and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit." *Liranzo* v. *United States,* 690 F.3d 78, 84 (2d Cir. 2012) (internal alteration and quotation mark omitted) (quoting *United States* v. *Mitchell,* 445 U.S. 535, 538 (1980)).

The Federal Tort Claims Act (the "FTCA") waives the United States' "immunity for claims arising from injury 'caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Al-Khazraji* v. *United States*, 519 F. App'x 711, 713 (2d Cir. 2013) (summary order) (quoting 28 U.S.C. § 1346(b)(1)).  Therefore, in a civil action alleging a non-constitutional tort, "[u]pon certification by the Attorney General that [a] defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, ... the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1); *accord, e.g.*, *B & A Marine Co.* v. *Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) ("To emphasize the exclusivity of the remedy against the United States under the FTCA, § 2679(d) requires that the United States be substituted as *the* party defendant upon certification by the Attorney General ... that the defendant employee was acting within the scope of his employment." (emphasis in original)); *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994).  United States Attorneys may make these certifications in actions arising in their districts.  28 C.F.R. § 15.4; *accord, e.g.*, *Prestop* v. *Hamlett,* No. 99 Civ. 2747 (GBD) (RLE), 2001 WL 363676, at *5

(S.D.N.Y. Apr. 12, 2001); *Garcia* v. *Pizzolato*, No. 99 Civ. 0898 (RCC), 2000 WL 328818, at *3 (S.D.N.Y. Mar. 28, 2000).

In the absence of an express certification from or on behalf of the Attorney General, a court may certify that a federal employee defendant was acting within the scope of his employment.  *Logan* v. *Matveevskii*, 57 F. Supp. 3d 234, 283-84 (S.D.N.Y. 2014) (quoting *B & A Marine Co.*, 23 F.3d at 715 ("Nonetheless, in the absence of a certification by the Attorney General, the [FTCA] permits the court to certify.")).  A court may do so upon receiving an employee's pretrial petition for certification, 28 U.S.C. § 2679(d)(3), and a brief filed by the Government on behalf of a named federal employee defendant can serve as such a petition.  *See, e.g.*, *B & A Marine Co.*, 23 F.3d at 715 n.4; *Logan*, 57 F. Supp. 3d at 283-84 (collecting cases).

Even an "Attorney General's certification that a federal employee was acting within the scope of his employment ... does not conclusively establish as correct the substitution of the United States as defendant in place of the employee," however.  *Gutierrez de Martinez* v. *Lamagno*, 515 U.S. 417, 434 (1995).  A court must conduct "a de novo review of a 28 U.S.C. § 2679(d) certification by the Attorney General (or his designee) if a plaintiff 'allege[s] with particularity facts relevant to the scope-of-employment issue.'"  *United States* v. *Tomscha*, 150 F. App'x 18, 19 (2d Cir. 2005) (summary order) (alteration in original) (quoting *McHugh* v. *Univ. of Vt.*, 966 F.2d 67, 74 (2d Cir. 1992), *abrogated on other grounds by Osborn* v. *Haley*, 549 U.S. 225 (2007)).  "The court must view the tortious conduct in the light most favorable to plaintiff,

but ... makes its own findings of fact with respect to the scope of the tortfeasor's employment and, in so doing, ... may rely on evidence outside the pleadings." *Bello* v. *United States*, 93 F. App'x 288, 289-90 (2d Cir. 2004) (summary order) (citing *McHugh*, 966 F.2d at 74-75); *accord Freitas* v. *Cooper*, No. 13 Civ. 4566 (RA), 2014 WL 494525, at *2 (S.D.N.Y. Feb. 5, 2014).  The court conducts this analysis according to "state law principles pertaining to when intentional torts conduct falls within the scope of a party's employment." *Bello*, 93 F. App'x at 289; *see also Regnante* v. *Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 768 (S.D.N.Y. 2015).

"Under New York law, an employee acts within the scope of his employment when [i] 'the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities,' and [ii] '[the employee] is doing something in furtherance of the duties he owes to his employer.'" *Fountain* v. *Karim*, 838 F.3d 129, 135 (2d Cir. 2016) (third alteration in original) (quoting *Hamm* v. *United States*, 483 F.3d 135, 138 (2d Cir. 2007)).  To determine whether an employee's tortious acts are done in furtherance of the duties he owes to his employer, a court considers:

> [i] the time, place and occasion for the act; [ii] the history of the relationship between employer and employee as spelled out in actual practice; [iii] whether the act is one commonly done by such an employee; [iv] the extent [to which the act] depart[s] from normal methods of performance; and [v] whether the specific act was one that the employer could reasonably have anticipated.

*Fountain*, 838 F.3d at 138 (quoting *Riviello* v. *Waldron,* 47 N.Y.2d 297, 303 (1979)); *accord, e.g., Tomscha*, 150 F. App'x at 19; *Bello*, 93 F. App'x at 290.

"[A]n employee's tortious acts fall within the scope of his employment if 'done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" *Tomscha*, 150 F. App'x at 19 (quoting *Riviello*, 47 N.Y.2d at 302); *accord Freitas*, 2014 WL 494525, at *2.

### 2.    Analysis

With regard to Defendant Poole, the United States has submitted its certification petition through its motion (Poole Br. 1), rather than by formal petition. *See Regnante*, 134 F. Supp. 3d at 769 n.14.  With regard to Defendant Bracey, the United States submitted a formal certification (Bracey Dkt. #1, Ex. 2), which engendered the removal of Plaintiff's New York City Small Claims court proceeding to this Court.  (Bracey Dkt. #1).

Plaintiff contests these certifications:  First, Plaintiff argues that a manager who does more than approve or deny an employee's sick leave, and actually leaves her work to check on the wellbeing of an employee, acts in an unprecedented, uncommon, and unforeseeable manner and thus outside the scope of her employment.  (Pl. Br. 4-5).  Second, Plaintiff argues that Defendants' commission of perjury in their statements regarding the May 6, 2015 incident violated their basic obligation of public service, pursuant to 5 C.F.R. § 2635.101, to avoid creating the appearance of a legal or ethical violation, and thus necessarily could not have been done in service to their employer.  (*Id.* at 4).  Third, Plaintiff contends that Defendants' intentional false statements regarding the events of May 6, 2015, were not common, never

anticipated, and always violative of the GSA's standards for employee conduct. (*Id.* at 4-5).

The Court does not find that Plaintiff has argued with particularity facts relevant to the scope-of-employment issue, such that the Court is obligated undertake a *de novo* review of the United States' certifications. *See Regnante*, 134 F. Supp. 3d at 768. Plaintiff's bald assertions of malice on the part of Defendants are insufficient to satisfy this standard. *See Asto* v. *Mirandona*, 372 F. Supp. 2d 702, 708 (E.D.N.Y. 2005) (rejecting plaintiff's "wholly conclusory argument" that defendant "possessed some personal motive causing him to maliciously defame [p]laintiff," which motive purportedly placed defendant's statements outside the scope of his employment). However, even assuming that Plaintiff had argued with particularity some relevant facts, and even viewing Defendants' allegedly tortious conduct in the light most favorable to Plaintiff, the Court would nonetheless conclude that the putative tortious acts of both Defendants were undertaken within the scope of their employment.

The Court finds that, on the whole and for the reasons discussed in more depth below, the *Riviello* factors weigh in Defendants' favor. Clearly, Defendants satisfy the first and second *Riviello* factors: First, Defendants undertook all of the actions at issue in these litigations during work hours, in the GSA offices, and in order to fulfill their employment responsibilities. Second, Defendants are not employees frequently disciplined for acting against their employer's will, but rather employees whose professional histories lack *any* instances of improper action outside the scope of their employment.

17

The Court admits that the third and fourth *Riviello* factors are closer calls, largely because the record lacks direct evidence pertaining to them.  It is less clear to the Court, for example, that checking on a sick employee or filing a statement claiming harassment that is alleged to be defamatory is an act commonly performed by employees in Defendants' positions.  And while the Court can determine, given the agency regulations that Plaintiff cites and its own common sense, that filing a false and defamatory report would constitute a departure from normal methods of performance, it finds more difficult the task of determining the degree of that departure.  Ultimately, however, Defendants' job descriptions, as provided by Defendants and their supervisors, provide sufficient indirect evidence to decide these two factors in Defendants' favor.  *See Petrousky* v. *United States*, 728 F. Supp. 890, 897-98 (N.D.N.Y. 1990).  And finally, to the fifth *Riviello* factor, while Defendants' conduct may not have been specifically foreseeable, it was generally foreseeable as required under New York law.

### a.    Defendants Acted Within the Workplace, During Business Hours, Pursuant to Their Employment Obligations

There is no dispute that Defendants' allegedly false and defamatory statements were occasioned by the Defendants' interaction with Plaintiff in the course of their checking on Mr. Davis's wellbeing.  Defendant Poole and her supervisor Jerome Fletcher confirm that Poole's job responsibilities as a Supervisory Policy and Program Advisor included ensuring the wellbeing of subordinate employees and reporting misconduct and harassment.  (Poole Decl. ¶¶ 4-5; Fletcher Decl. ¶¶ 2, 4-5).  Likewise, Defendant Bracey and her

supervisor Mildred Quinley stated that Bracey was in charge of Mr. Davis and obligated to oversee his wellbeing in the workplace.  (Bracey Decl. ¶¶ 2, 5; Quinley Decl. ¶ 4).  It was further part of Bracey's job to assist Poole during her visit to the 26 Federal Plaza Office, which she did in escorting Poole to the Union Office and in introducing Poole to Mr. Feffer.  (Quinley Decl. ¶¶ 7-9).  Each Defendant's ostensibly defamatory statements were made during work hours and in the GSA offices, during which time and place each Defendant was under her employer's control.  (Poole Decl. ¶ 10; Fletcher Decl. ¶¶ 10, 11; Bracey Decl. ¶ 7; Quinley Decl. ¶ 10).  *See Tomscha* v. *Greenberg*, No. 04 Civ. 2953 (DLC), 2004 WL 1878749, at *3 (S.D.N.Y. Aug. 20, 2004) (affirming that defendant acted within the scope of his employment when he sent an allegedly defamatory memorandum "on GSA stationary and in his official capacity as Assistant Regional Administrator").  This factor thus weighs strongly in Defendants' favor.

### b.    Neither Defendant Has a History of Acting Outside of the Scope of Her Employment

Defendant Poole's supervisor Jerome Fletcher attested that Poole's making of false statements, if true, was not in keeping with her usual behavior as a GSA employee; he described her lack of a history of acting outside the scope of her employment, which Plaintiff does not dispute, and identified her as an "exemplary employee."  (Fletcher Decl. ¶ 11).  Similarly, Defendant Bracey's supervisor stated that Bracey "had no history of acting outside the scope of employment in connection with her work for the GSA."  (Quinley Decl. ¶ 4).  Though Plaintiff states that Bracey "with the approval of [D]efendant Poole

ha[d] been harassing [Mr.] Davis creating a hostile work environment," there is no evidence that this was the case.  In fact, Mr. Davis himself, in an email provided by Plaintiff, noted that Poole's name-calling "did not strike [him] as being in keeping with her character or general disposition."  (Compl. Ex. 4). The history of both Defendants' relationship with the GSA thus indicates that each tends to act within the scope of her employment.

### c.   Defendants' Acts Are of the Kind Typically Performed by Employees in Defendants' Positions

In their respective positions as Supervisory Policy and Program Advisor and Lead Small Business Specialist, Defendants Poole and Bracey were obligated to ensure the wellbeing of their subordinates, to report misconduct and harassment, and to assist others with the process of that reporting.  (Poole Decl. ¶¶ 3-4; Bracey Decl. ¶¶ 3-4, 6).  "Thus, even though the court cannot determine [Defendants'] actual practice, what [they] commonly did, or whether there were departures from normal methods of performance," the Court *can* determine, considering Defendants' jobs generally, that each was expected to ensure employee wellbeing and report issues involving misconduct or harassment.  *Petrousky*, 728 F. Supp. at 897-98; *see also Tomscha*, 2004 WL 1878749, at *3 (finding defendant acted within the scope of his employment when he sent an allegedly defamatory memorandum to fulfill the general obligation of an Assistant Regional manager "to administer and control the funds and personnel in his region").  "A natural manner" to fulfill these obligations would be through personal visits and the filing of oral and written statements describing incidents.  *See Petrousky*, 728 F. Supp. at 898.  Thus,

Defendants' behavior was not uncommon or unusual relative to the behavior expected of employees in Defendants' positions.

> ### d. Defendants' Departure from Normal Methods of Performance Was Not of a Sufficient Magnitude as to Place Their Acts Outside the Scope of their Employment

Defendants' alleged departures from normal methods of performance were not of such a magnitude as to render their conduct outside the scope of their employment:  Defendant Poole followed the requisite procedures to report what she perceived to be harassment, and Defendant Bracey acted in accordance with GSA policy by connecting Poole to Mr. Feffer and complying with the GSA's subsequent investigation.  *See Bello*, 93 F. App'x at 290 (holding that though a federal employee "committed slander when he named names [in a press interview], the statements were not so far removed from the normal performance of the assigned press task to take it outside the scope of his employment"); *Gore* v. *Kuhlman*, 630 N.Y.S.2d 141, 142 (1995) (holding that even if "defendants abused their authority as plaintiff's supervisors for the purpose of harassment, as alleged by plaintiff," this was not such "a departure from the normal methods of performing the duties of employment" as to place defendants outside the scope of their employment).  Even if the manner of either Defendant's compliance with these procedures was colored by personal animus — or in Poole's case, by her opinion that Plaintiff was "classless" or an "asshole" — each Defendant still acted within the scope of her employment in reporting the incident with Plaintiff as her job required.  *See Bello*, 93 F. App'x at 291 ("In the course of investigating the charges pleaded in the harassment

complaint, [the federal employee] may well have formed a negative opinion of [the plaintiff], but the fact that such an opinion informed his subsequent performance of an assigned task — responding to press inquiries about the complaint and related consent decree — does not transform that professional task into a personal one.").

### e.   Defendants' Acts Were Generally Foreseeable

"Under New York law, an employee's actions need only be generally, not specifically, foreseeable to the employer, to fall within the scope of employment."  *Bello*, 93 F. App'x at 290 (citing *Riviello*, 47 N.Y.2d at 304 ("[F]or an employee to be regarded as acting within the scope of his employment, the employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected." (internal citation omitted))).  Courts in this Circuit have found the foreseeability factor met where an employee made libelous or defamatory statements and the general act of making those statements was part of her job responsibilities.  *See, e.g.*, *B & A Marine Co.*, 23 F.3d at 714 ("[I]n writing the letter, and in particular the allegedly libelous portion of the letter, AFS was carrying out the explicit instructions of its principal.  Thus, it is not seriously open to dispute that the sending of the letter was within the scope of the employment."); *Bello*, 93 F. App'x at 290 (holding that it was reasonably foreseeable that a federal trial lawyer, in performing his employment obligation of "responding to questions about ... complaint charges, might expand on the pleaded facts, identifying persons purportedly involved in the alleged

harassment," and thereby commit slander).  Here then, it was generally foreseeable that "a supervisor [like Defendant Poole or Defendant Bracey] would at times have a personality conflict with a subordinate and that the personality conflict would be reflected in [her reports]."  *Petrousky*, 728 F. Supp. at 898.

Assuming *arguendo* that the Court needed to perform the above scope-of-employment analysis, and finding pursuant to it that both Defendants' ostensibly tortious acts, considered under New York state law, were undertaken within the scope of her employment, the Court must grant the petition of the United States for certification with regard to Defendant Poole, and accept the certification offered by the Attorney General with regard to Defendant Bracey.  Accordingly, the Court grants each Defendant's motion to substitute the United Stated as Defendant.

**B.   The Court Will Dismiss Plaintiff's Actions**

**1.   Applicable Law**

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.* v. *Dupont,* 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co.* v. *Kroger*, 437 U.S. 365, 374 (1978)).  In that regard, "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'"  *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638

(2d Cir. 2005) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir.
2000)); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir.
2013).  "A plaintiff asserting subject matter jurisdiction has the burden of
proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d
at 113.

"In resolving a motion to dismiss under Rule 12(b)(1), the ... court must
take all uncontroverted facts in the complaint ... as true, and draw all
reasonable inferences in favor of the party asserting jurisdiction."  *Tandon* v.
*Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).
"[J]urisdiction must be shown affirmatively," however, "and that showing [may]
not [be] made by drawing from the pleadings inferences favorable to the party
asserting it."  *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.
2008) (internal quotation marks omitted) (quoting *APWU* v. *Potter*, 343 F.3d
619, 623 (2d Cir. 2003)).  Moreover, where subject matter jurisdiction is
contested, a district court is permitted to consider evidence outside the
pleadings, such as affidavits and exhibits.  *See, e.g.*, *Fountain*, 838 F.3d at 134
("[T]he court may resolve the disputed jurisdictional fact issues by referring to
evidence outside of the pleadings, such as affidavits, and if necessary, hold an
evidentiary hearing." (alteration in original) (internal quotation marks omitted)
(quoting *Zappia Middle E. Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247,
253 (2d Cir. 2000))); *accord Tandon*, 752 F.3d at 243 ("[W]here jurisdictional
facts are placed in dispute, the court has the power and obligation to decide
issues of fact by reference to evidence outside the pleadings, such as

affidavits." (internal quotation marks omitted) (quoting *APWU*, 343 F.3d at 627)).

Where the United States has not waived its sovereign immunity, federal subject matter jurisdiction does not exist.  *See United States* v. *Sherwood*, 312 U.S. 584, 586-87 (1941); *Williams* v. *United States*, 947 F.2d 37, 39 (2d Cir. 1991).  In the context of tort claims against the United States, the "FTCA provides a waiver of sovereign immunity for some tort actions, but the FTCA's waiver does not extend to claims 'arising out of ... libel, slander, misrepresentation, [or] deceit.'"  *Charles* v. *Potter*, No. 07 Civ. 10572 (SHS), 2008 WL 4499130, at *2 (S.D.N.Y. Oct. 7, 2008) (alterations in original) (quoting 28 U.S.C. § 2680(h)); *see also B & A Marine*, 23 F.3d at 714-15. Courts in this Circuit have routinely found therefore that claims of libel, slander, and defamation brought against the Government must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  *See, e.g.*, *Spinale* v. *U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 116 (S.D.N.Y.), *aff'd sub nom. Spinale* v. *U.S. Dep't of Agric.*, 356 F. App'x 465 (2d Cir. 2009) (summary order) (dismissing defamation claim); *Charles*, 2008 WL 4499130, at *2-3 (dismissing defamation, slander, and libel claims); *Thomas* v. *Dep't of Veterans Affairs*, No. 05 Civ. 5348 (LAK) (THK), 2006 WL 1636738, at *5 (S.D.N.Y. Apr. 3, 2006), *report and recommendation adopted*, No. 05 Civ. 5348 (LAK), 2006 WL 1594481 (S.D.N.Y. June 6, 2006) (dismissing defamation, slander, and libel claims and collecting cases doing the same).  This is true even where plaintiffs are left without a remedy.  *See B & A Marine*, 23 F.3d at 715; *cf. Al-*

25

*Khazraji*, 519 F. App'x at 713 ("[T]he 'United States' waiver of immunity under the FTCA is to be strictly construed in favor of the government.'" (quoting *Liranzo*, 690 F.3d at 84)).

### 2.   The Court Will Dismiss Plaintiff's Non-Constitutional Claims of Defamation and Libel

Plaintiff claims that Defendant Poole caused him pain and suffering by making defamatory, slanderous, and false allegations of sexual harassment against Plaintiff in her statements to Mr. Feffer and Ms. Latterman.  (*See generally* Compl.).  Without providing much detail, Plaintiff also claims that Defendant Bracey wronged him through defamation.  (Bracey Notice of Removal, Dkt. #1 Ex. 1).  Because the United States has not waived its sovereign immunity for defamation, slander, or libel claims, upon substitution of the United States as Defendant in each of these litigations, this Court finds itself without subject matter jurisdiction over these of Plaintiff's claims.

### 3.   Plaintiff Fails to State a Claim of Constitutional Defamation

#### a.   Applicable Law

"The Second Circuit recognizes that the 'defamation plus' or 'stigma plus' doctrine enables a plaintiff, in limited circumstances, to seek relief for government defamation under federal constitutional law."  *Spinale*, 621 F. Supp. 2d at 118 (citing *Sadallah* v. *City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).  In order

> [t]o prevail on a 'stigma plus' claim, a plaintiff must show [i] the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and [ii]  a material state-imposed burden or

> state-imposed alteration of the plaintiff's status or
> rights.

*Shapiro* v. *Goldman*, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *21

(S.D.N.Y. Aug. 15, 2016) (quoting *Sadallah*, 383 F.3d at 38 (internal quotation

marks omitted)).  The first requirement, that of "stigma," is satisfied where a

plaintiff can show that "federal defendants' statements will result in stigma,

'public opprobrium and damage to [his] reputation.'"  *Duran* v. *City of N.Y.*,

No. 96 Civ. 4219 (MBM) (LB), 1998 WL 603212, at *4 (S.D.N.Y. Sept. 11, 1998)

(alteration in original) (quoting *Valmonte* v. *Bane*, 18 F.3d 992, 999 (2d Cir.

1994)).  If a plaintiff demonstrates stigma, he then must satisfy the "plus"

element, showing loss of "some other tangible element in order to rise to the

level of a protectable liberty interest."  *Id.* (quoting *Valmonte*, 18 F.3d at 999

(internal quotation mark omitted)).  Burdens rising to this level include

"dismissal from a government job or deprivation of some other legal right or

status," *id.* (citing *Paul* v. *Davis*, 424 U.S. 693, 706 (1976), and *Neu* v.

*Corcoran*, 869 F.2d 662, 666-67 (2d Cir. 1989)), as well as "deprivation of [a

plaintiff's] property, employment, and direct interference with [a plaintiff's]

business."  *Spinale*, 621 F. Supp. 2d at 119 (citing *Sadallah*, 383 F.3d at 38

(citing cases)).

### b.    Analysis

Mindful of the solicitude with which it must review pleadings filed by *pro

se* plaintiffs, the Court has carefully considered whether Plaintiff's claims could

be construed to allege a constitutional tort of defamation.  *See Boykin* v.

*KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson* v. *Pardus*, 551

U.S. 89 (2007)); *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("Courts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996))).  The Court finds that they cannot.  Even accepting Plaintiff's allegations that he has suffered stigma at Defendants' hands — because Defendants made false statements, which Plaintiff could prove false, and which resulted in "public opprobrium" and damage to Plaintiff's reputation (Compl. 3-4, 7) — the Court cannot find that Plaintiff has alleged, nor could allege, a tangible loss implicating a protectable liberty interest.  Plaintiff has not claimed that he suffered any employment consequence or other deprivation of property or any legal right or status as a result of Defendants' conduct.  (*See generally* Compl.).  Indeed, the Court notes that Plaintiff's own evidence indicates that "no administrative action [was] taken against [Plaintiff] as a result [of the May 6, 2015 incident]."  (Pl. Br. Ex. 3).  Plaintiff also does not cite any case law that might evince his intent to claim defamation as a constitutional tort; in his case against Defendant Poole, for example, Plaintiff cites exclusively to New York state law to define defamation and libel.  (Compl. ¶¶ 11-12).  The Court finds, therefore, that Plaintiff claims only defamation as a non-constitutional tort.  For the reasons aforementioned, that claim is precluded by the FTCA and does not succeed in either of these litigations.

## CONCLUSION

For the reasons set forth in this Opinion, each Defendant's motion to substitute the United Stated as defendant is GRANTED and each Defendant's

motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate all

pending motions, adjourn all remaining dates, and close these two cases.

       SO ORDERED.

Dated:      December 20, 2016
           New York, New York

                                       _____
                                         KATHERINE POLK FAILLA
                                  United States District Judge